IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TAMMY W. AKERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 7:12-CV-294 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Tammy W. Akers ("Akers") filed this action challenging the final decision of the

Commissioner of Social Security ("Commissioner") finding her not disabled and therefore

ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42

U.S.C. §§ 401–433. Akers alleges that the Administrative Law Judge ("ALJ") that heard and

decided her claim committed error on numerous grounds. The focus of this opinion, however, is

on a single, dispositive issue: whether additional evidence of shoulder and wrist surgery

performed a few months after the ALJ's decision necessitates remand for further administrative

consideration. I conclude that remand of the Commissioner's decision is proper in light of the

additional evidence. Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion

for Summary Judgment (Dkt. No. 26), **GRANTING IN PART** Akers' Motion for Summary

Judgment (Dkt. No. 16), and reversing and remanding this case for further administrative

consideration consistent with this Report and Recommendation.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Akers failed to demonstrate that she was disabled under the Act.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).

## CLAIM HISTORY

Akers protectively filed for DIB on September 16, 2008, claiming that her disability began on January 1, 2008. R. 62. The state agency denied her application at the initial and reconsideration levels of administrative review. R. 86–88, 93–94. On August 5, 2010, ALJ Joseph T. Scruton held a hearing to consider Akers' disability claim. R. 33–56. Akers was represented by an attorney at the hearing, which included testimony from Akers and vocational expert ("VE") Mark A. Hileman. R. 33–56.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

On September 17, 2010, the ALJ entered his decision analyzing Akers' claim under the familiar five-step process[3] and denying her claim for benefits. R. 11–28. The ALJ found that Akers suffered from the severe impairments of uterine fibroid tumors, status post attempted hysterectomy in 2007, endometriosis, back strain, depression, anxiety, and hypertension and diabetes—both under intermittent control. R. 16. The ALJ determined that Akers' symptoms related to her shoulder strain and other ailments were non-severe "as they have been responsive to treatment and/or cause no more than minimally vocationally relevant limitations." R. 16. The ALJ further found that Akers' severe impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 17. The ALJ concluded that Akers retained the residual functional capacity ("RFC") to perform a range of sedentary work, and specifically that:

> The claimant would be capable of lifting/carrying 10 pounds; standing/walking for 2 hours in a normal 8-hour workday; and sitting for 6 hours in a normal 8-hour workday. She would require work that does not require constant handling and fingering; she would require work that allowed for very brief in-place shifting of positions or posture and very brief standing up from a seated position; and she is able to mentally accomplish routine, repetitive work tasks and to maintain attention and concentration for at least 2 hour periods at a time without significant work break.

R. 19. The ALJ determined that Akers could not return to her past relevant work as a cashier/checker, sewing machine operator, and store laborer (R. 27), but that Akers could work at jobs that exist in significant numbers in the national economy, such as a call–out operator, addresser, and pharmaceutical packager. R. 28. Thus, the ALJ concluded that Akers was not

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

disabled.  R. 28.  On June 21, 2012, the Appeals Council denied Akers' request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Akers contends that her claim should be remanded for further administrative consideration on the basis of additional medical records that were not before the ALJ, but were later submitted to the Appeals Council. Specifically, Akers identifies a series of medical records that show that she underwent shoulder and wrist surgery only months after the ALJ's decision to deny benefits. In his decision denying benefits, the ALJ found that Akers' shoulder strain was not a severe impairment. The Appeals Council considered the additional evidence documenting surgery, but summarily found that the records did not provide a basis for changing the ALJ's decision. R. 2. I find that in light of this additional evidence regarding shoulder surgery, remand is proper to consider the evidence within the record as a whole.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991).  Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

When the Appeals Council denied Akers' request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.  As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. Wilkins, 953 F.2d at 96.  "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to

4

resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005)(citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)).  Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. Davis, 392 F. Supp. 2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports.  If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence.  If such conflicts are not present, the case can be decided on the existing record without a remand. Id. (citing Bryant v. Barnhart, No. 6:04cv000017, 2005 WL 1804423, *5 (W.D. Va. Jan 21, 2005); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 n. 6 (W.D. Va. 1999); Thomas v. Commissioner, 24 Fed. Appx. 158, 162, 2001 WL 1602103, at *4 (4th Cir. 2001) (unpublished opinion).

The record shows that Akers has numerous impairments, both physical and mental, causing the ALJ to find that Akers was limited to a range of routine and repetitive sedentary work. R. 16, 19. In addition to diabetes and hypertension, much of the medical record from the relevant period concerns Akers' uterine fibroids, for which surgery was twice unsuccessful and causes Akers' to have pelvic cramps, heavy bleeding, and back pain. R. 383–84, 428–44, 494–96, 501–05. Akers' complaints of shoulder pain did not emerge until late 2009, when she began seeing nurse practitioner Carolyn King at the Bland County Medical Clinic. On October 30,

2009, Akers reported that her right shoulder had begun hurting one year prior, but worsened just two months prior to the visit. R. 479. Akers described the shoulder pain as aches, stated that the pain got worse when she tried doing crafts at home, and that it was hard to find a comfortable position at night. On physical examination, Ms. King found that Akers had a painful range of motion in her right shoulder, diminished strength secondary to pain, tenderness, a painful arc at 90 degrees, and a positive impingement sign, but a negative drop arm test. R. 480. Ms. King assessed shoulder pain, prescribed over-the-counter pain medication, and ordered x-rays, which were negative. R. 482, 511.

On December 22, 2009, Akers again complained of right shoulder pain to Ms. King, stating that it felt "like bone grinding on bone." R. 475. Akers reported that pain in her shoulder and wrists kept her awake at night. Ms. King's physical examination again showed limited range of motion and decreased strength in her right shoulder, as well as crepitous and a tender anterior portion. R. 476. Ms. King also noted a painful arc at 90 degrees, and that a drop arm test was negative. Ms. King prescribed Mobic and Ultram for the pain, and discussed with Akers the need for an MRI of her right shoulder. Akers stated that she could not afford an MRI at that time.

On July 8, 2010, Akers reported to Ms. King that she had developed left shoulder pain on June 18, 2010, when she helped her husband carry a heavy car hood. On examination, Ms. King found that Akers had left shoulder pain when raising her arm above her shoulder. R. 523. Ms. King prescribed pain medication and ordered an x-ray, which showed no acute bony abnormality. R. 525–26. Ms. King discussed the need for an MRI.

6

In his decision denying benefits entered on September 17, 2010, the ALJ found that

Akers' symptoms of shoulder strain did not constitute a severe impairment. R. 16. [4] The ALJ

explained that Akers' shoulder pain and other impairments deemed non-severe[5] had been

"responsive to treatment and/or cause no more than minimally vocationally relevant limitations."

R. 16.  In the section of the decision explaining his conclusion that Akers was capable of

performing a range of light work, the ALJ reviewed the records from late October 2009—when

Akers' complaints of shoulder pain began—and commented that Akers "complained of

continuing difficulty with chronic pain symptoms but was observed with no significant

limitations and essentially admitted she was doing well." R. 23.  As to records from July 2010,

the ALJ referenced Akers' report of left shoulder pain from heavy lifting, but noted that Akers

"generally was doing well and without complaints" and that Ms. King "observed her in no acute

distress and advised she continue prescribed medications until follow up in 6 to 8 weeks." R. 23.

The ALJ made no specific reference to Akers' right shoulder pain in the opinion. The ALJ found

that Akers was limited to lifting or carrying 10 pounds and restricted her to a job that did not

require constant handling and fingering (R. 19), but did not provide for any limitations in

overhead reaching, pushing, pulling, or other use of Akers' arms and shoulders.

MRIs of both shoulders taken in advance of Akers seeing David Diduch, M.D., on

October 18, 2010, showed bilateral rotator cuff  tears. R. 549–50.  At the October 18, 2010 visit,

Akers reported to Dr. Diduch that her right shoulder pain began two or three years prior, and that

---

[4] I note that in finding the symptoms from Akers' shoulder strain non-severe, the ALJ referenced only the July 8, 2010 treatment note wherein Akers complained of *left* shoulder pain from helping carry a car hood; no specific reference was made to Akers' earlier complaints of *right* shoulder pain contained in the record.

[5] An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. § 404.1521(a). Akers, as claimant, bears the burden of proof in showing that any of her impairments were severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.1995). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984).

her left shoulder pain began in early summer 2010 while moving a car hood with her husband. R. 549. Dr. Diduch noted that the right rotator cuff tear was worse than the left, and Akers indicated to Dr. Diduch that she would like to address her right shoulder first surgically. R. 550. Since Akers also had carpal tunnel syndrome, Dr. Diduch scheduled a right rotator cuff repair surgery in coordination with hand surgery for her carpal tunnel syndrome. Dr. Diduch performed a right shoulder arthroscopic rotator cuff repair on December 3, 2010; Akers underwent a right carpal tunnel release the same day. R. 538–39. Post-operative notes suggest that the operation went as planned (R. 533, 584); however, the last medical record is from December 20, 2010, leaving little insight into the long-term effect of the surgery on Akers' functional ability.

I find that the additional evidence regarding Akers' 2010 shoulder surgery meets the requirements of Wilkins, and that remand is proper for full consideration of these records. As an initial matter, the Commissioner does not dispute that the records are "new" in that they were not present in the record before the ALJ's decision, and are therefore not duplicative or cumulative. Def.'s Br. Summ. J. 9.

Moreover, although the additional evidence consists of records from surgical treatment provided after the ALJ's decision, I find that this treatment sufficiently relates back to the relevant period before the ALJ's decision. Akers reported to Dr. Diduch one month after the ALJ rendered his decision that her right shoulder pain began two or three years prior, and that her left shoulder pain began in the "early summer 2010 while moving a car hood with her husband." R. 549. This timeframe is corroborated by additional records considered by the ALJ, indicating that Akers' shoulder injury existed well before the ALJ's decision. R. 479, 523. There is no suggestion of an intervening injury or deterioration in the condition of Akers' shoulders following the ALJ's decision, the proper remedy for which would be re-filing a new claim for

8

benefits. To the contrary, the evidence suggests that Akers' rotator cuff tears were confirmed by an MRI, which Akers could not afford prior to the ALJ's decision. R. 476. Further delay in the shoulder surgery can also be attributed to a desire to perform both the shoulder surgery and carpal tunnel release at the same time, a task that required coordination between two separate surgeons. Therefore, I find that the additional evidence surrounding Akers' December 2010 shoulder and wrist surgery relate back to the relevant time period before the ALJ's decision. See, e.g., Reynolds v. Astrue, 7:07CV00586, 2008 WL 3910833, at *3 (W.D. Va. Aug. 25, 2008) (remanding where additional evidence included an MRI from less than two months after ALJ's decision that established disc herniation and surgery shortly thereafter).

I further find that the additional evidence is material, as it calls into doubt both the ALJ's characterization of Akers' shoulder pain as non-severe and the final RFC determined by the ALJ. There is a reasonable possibility that evidence regarding Akers' surgeries would change the ALJ's decision. First, the ALJ found that Akers' symptoms of shoulder pain were non-severe as they either responded to treatment or did not cause vocationally relevant limitations. R. 16. "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984). The record before the ALJ documented Akers' shoulder pain, but the exact etiology of the pain was not confirmed until a month following the decision. Indeed, Akers' impairment was not a "strain" as characterized by the ALJ, but a torn rotator cuff in both shoulders which required surgical repair on the right. This additional evidence suggests that Akers' shoulder condition was

9

not a "slight abnormality," see Evans, 734 F.2d at 1014, but an impairment that may have caused significant work-related functional limitation.

Furthermore, I am unable to determine whether substantial evidence supports the determination that Akers was capable of performing the range of sedentary work found by the ALJ. The ALJ dismissed Akers' complaints of pain in October 2009 because she was "observed with no significant limitations and essentially admitted she was doing well" (R. 23) but failed to note that Akers' right shoulder exhibited a painful range of motion, diminished strength, tenderness, a painful arc at 90 degrees, and impingement in her right shoulder. R. 480. While perhaps these findings do not constitute "significant limitations," evidence of subsequent surgery sufficiently calls into question this characterization by the ALJ. The ALJ did not have an opportunity to consider the records of the diagnosis of torn rotator cuffs and the shoulder surgery. There has been no evaluation or medical opinion as to what, if any, long term effect the surgery had on Akers' functional ability. The RFC crafted by the ALJ limited Akers to lifting or carrying 10 pounds, and less than constant handling and fingering. R. 19. However, the ALJ did not limit in any way Akers' overhead reaching, pushing, pulling, or other typical arm and shoulder functions that may accompany sedentary work. It is also unclear whether any limitations caused by Akers' shoulder condition were brought to the attention of the vocational expert during the ALJ's questioning, and whether such limitations eroded the sedentary occupational base available to Akers.

Simply put, the Commissioner asks this Court to speculate as to the impact of Akers' shoulder surgery on her functional ability and find that the ALJ's decision would remain unchanged. It may be that evidence of Akers' surgery does not alter the outcome of the ALJ's analysis. That decision does not rest with the Court, however, and as there is a sufficient

probability that the additional evidence will change the outcome, the law requires that I remand the case. See, e.g., Burton v. Colvin, CA 4:11-03335-CMC, 2013 WL 3551120, at *3 (D.S.C. July 11, 2013) ("In light of the new evidence that appears to conflict with one or more critical bases in the ALJ's opinion, and the lack of explanation by the Appeals Council as to why that new evidence did not affect Plaintiff's disability determination, the court cannot say that the ALJ's decision is supported by substantial evidence.").

In light of the ALJ's finding that Akers' shoulder strain was non-severe and the additional evidence of subsequent surgical intervention, I am unable to determine whether substantial evidence supports the final decision of the Commissioner to deny benefits to Akers. I therefore recommend remanding Akers' claim under sentence four of 42 U.S.C. § 405(g) for consideration of this additional evidence and the record as a whole. Because I recommend remand on the basis of additional evidence, I need not address Akers' additional arguments regarding the ALJ's evaluation of Akers' non-exertional impairments, the combined effect of her impairments, and the vocational expert testimony. Upon remand, however, the ALJ should carefully consider the record pursuant to the regulations, including the additional evidence submitted to the Appeals Council, in evaluating Akers' claim.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the court **DENY** defendant's motion for summary judgment, **GRANT IN PART** Akers' motion for summary judgment, and that this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) with instructions to consider the additional evidence detailed above.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of

11

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  November 19, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge